IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EDWARD A. DEVANCE, | |
| Plaintiff, | **8:20CV405** |
| vs. | |
| CITY OF OMAHA, TODD SCHMADERER, Chief of Police; SEAN GARDNER, #1896, Police Officer; and KEVIN CHECKSFIELD, #1898, Police Officer; | **MEMORANDUM AND ORDER** |
| Defendants. | |

This case is before the court on Defendants' Motion for Summary Judgment (Filing No. 56) seeking dismissal of Plaintiff's Complaint in its entirety. Being fully advised, the court will grant the motion.

BACKGROUND

Plaintiff Edward DeVance ("DeVance") was arrested by Omaha Police Department Officers Kevin Checksfield ("Checksfield") and Sean Gardner ("Gardner") on August 31, 2020 near the State of Nebraska Omaha Correctional Center ("OCC"). DeVance's arrest, and the circumstances leading thereto, give rise to this lawsuit. DeVance has sued Officers Checksfield and Gardner pursuant to 42 U.S.C. § 1983, naming them as defendants in their individual capacities. He has also named the City of Omaha and Omaha Chief of Police Todd Schmaderer (in his official capacity) as defendants.

1

The following is a complete restatement of the allegations contained within DeVance's operative pleading ([Filing No. 1](#)):

> I am a 65 year old black man who was walking and recording from a public street, 2400 Avenue J, Omaha, NE, 68110. I was approached by Officers Gardner and Checksfield who asked me to move on. I advised I was on a public street and exercising my 1st Amendment Right to record. They advised me of loitering statute 28-914, I responded I had a purpose and I was not loitering. Officer Checksfield responded it was good I had a purpose, but I still needed to move on. I refused, because at no time did I set foot on prison property, and I was only recording for a short period of time. I was arrested 1:16 minutes after both officers arrived, clearly insufficient time to investigate or formulate a loitering charge which they did not witnessed. [sic] Secondly, they conducted an unconstitutional search of my person and seized my property. Handcuffs were put on so tightly causing me to complain of dizziness because of a heart condition, my hands were swollen for two days. A hasty decision was made by the officers after seeing I was an African American male to arrest me with no due process, and no further investigation. The entire incident was recorded by me with two devices.

([Filing No. 1 at CM/ECF p. 5](#))

> Officers Gardner and Checksfield arrested me for exercising my First Amendment right for filming from a public area/loitering, and my Fourth Amendment right for unconstitutional search and seizure of my person. For use of excessive force and requiring me to post bail for a ticketable offense, my Eighth Amendment right was violated. My Fourteenth Amendment was violated because of Social Security Act etc. These officers report to Chief of Police Schmaderer. The Chief of Police works for the City of Omaha.

([Filing No. 1 at CM/ECF p. 4](#)).

> I am seeking $175,000 in exemplary/punitive damages for willful and egregious violations of my civil rights mentioned above. The basis for this claim is pain and suffering, mental anguish and humiliation, along

with a deterrent to discourage racial profiling against African American citizens.

([Filing No. 1 at CM/ECF p. 6](#)).

The entire incident in question was captured on video. When the defendant officers arrived at OCC, DeVance was recording his surroundings via both his cellphone camera and a portable camcorder. The officers were also wearing body-worn cameras which recorded their interaction with DeVance from the time of their arrival at OCC and throughout the entire transportation and booking process incident to his arrest.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. Id.

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Id. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. Id. But the nonmovant must do more than simply show that there is some

metaphysical doubt as to the material facts. Id. In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. Quinn v. St. Louis County, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Torgerson, 643 F.3d at 1042.

## DISCUSSION

The court will bifurcate its discussion of DeVance's allegations and address the individual capacity defendants and the city and official capacity defendant separately.

I.   Individual Capacity Claims

DeVance has sued Officer Checksfield and Officer Gardner in their individual capacities. (Filing No. 1 at CM/ECF p. 3). DeVance claims that during their encounter, the officers violated his First, Fourth, Eighth and Fourteenth Amendment rights. The officers argue that they are entitled to qualified immunity as to all of DeVance's allegations, that "[j]udgment must be entered in favor of Officers Checksfield and Gardner," and that DeVance's complaint must be dismissed in its entirety. (Filing No. 57 at CM/ECF p. 9).

Liberally construed and restated, DeVance claims that he was engaged in activity protected by the First Amendment at the time of his arrest. He asserts that the officers arrested him in retaliation for his engagement in that protected conduct;

namely, that he was arrested in retaliation for exercising his right to film government officials from a public right-of-way. ([Filing No. 1 at CM/ECF pp. 4-6](#)); ([Filing No. 61 at CM/ECF p. 12](#)). DeVance further claims that he was arrested without probable cause, that the officers used excessive force when placing him in handcuffs, and that the search incident to his allegedly unlawful arrest was unconstitutional. ([Filing No. 61 at CM/ECF pp. 16](#), 19 and 21). DeVance also purports to state an Eighth Amendment claim related to excessive bail and alleges that the arresting officers violated his Fourteenth Amendment rights "in violation of the Social Security Act, etc." ([Filing No. 1 at CM/ECF p. 4](#)).

The court has thoroughly reviewed the record in his matter, and the following claims (related to the circumstances of DeVance's allegedly unconstitutional arrest) will be analyzed in the context of the defendant officers' claim of qualified immunity: (1) Fourth Amendment: Unlawful Arrest (lack of probable cause); (2) First Amendment: Retaliatory Arrest; (3) Fourth and Fourteenth Amendment: Use Excessive Force; and (4) Fourth Amendment: Unlawful Search Incident to Arrest. The remaining claims supposedly asserted against the individual officers do not lend themselves to that analysis and will thus be considered separately.

A. Qualified Immunity

Qualified immunity shields governmental officials sued in their individual capacities from personal liability if their actions, even if unlawful, were nevertheless objectively reasonable in light of the clearly established law at the time of the events in question. [Anderson v. Creighton, 483 U.S. 635 (1987)](#); see also [Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012)](#); [Pearson v. Callahan, 555 U.S. 223, 231 (2009)](#); [Parker v. Chard, 777 F.3d 977, 979 (8th Cir. 2015)](#). In determining whether a government official is entitled to qualified immunity, the Court asks (1) whether the facts establish a violation of a constitutional or statutory

right and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. Johnson v. Phillips, 664 F.3d 232, 236 (8th Cir. 2011).

Once the relevant predicate facts are established, the reasonableness of the officer's conduct under the circumstances is a question of law. McKenney v. Harrison, 635 F.3d 354, 359 (8th Cir. 2011); Mann v. Yarnell, 497 F.3d 822, 825 (8th Cir. 2007); see Scott v. Harris, 550 U.S. 372, 381 n.8 (2007). And the ultimate question of qualified immunity is also one of law. Littrell v. Franklin, 388 F.3d 578, 584-85 (8th Cir. 2004).

a.  Unlawful Arrest

DeVance asserts that Officers Checksfield and Gardner lacked probable cause to arrest (seize) him. If there was probable cause to arrest DeVance, he cannot, for purposes of his Fourth Amendment unlawful arrest claim, establish a violation of a clearly established constitutional right. If the officers had probable cause to arrest DeVance, they cannot be liable for an unlawful arrest.

As noted at the outset of this order, the entire incident underpinning this lawsuit was captured on video. The court has reviewed the video evidence – both the video captured by the plaintiff (Def. Exhibits 9 and 10) and the video captured by the officers' body-worn cameras (Def. Exhibits 4 and 5), and finds that there is no reasonable dispute as to the following facts related to DeVance's arrest:

- On August 31, 2020, DeVance was standing, at all relevant times, in the 2400 block of Avenue J in Omaha, Nebraska.

- DeVance was approximately 150 yards from the main entrance to the State of Nebraska Omaha Correctional Center.[1]

- While standing on Avenue J, DeVance was approached by OCC personnel. The OCC personnel told DeVance that he was on correctional facility property and that he needed to leave.

- DeVance did not leave and informed OCC personnel that he would remain where he was standing in order to exercise his First Amendment right to film the correctional facility and its staff.

- OCC personnel called the police and Omaha Police Department Officers Checksfield and Gardner were dispatched to the scene.

- OCC personnel informed Officers Checksfield and Gardner that they had asked DeVance to move from his location on Avenue J but that he failed and refused to comply.

- The officers asked DeVance if he was attempting to visit an inmate being held at OCC. DeVance failed to give the officers a definite answer to that inquiry.

- DeVance told that officers that he had a "purpose" and refused again to move away from the correctional facility.

- The officers told DeVance that he needed to leave, specifically indicating that remaining in his current location violated a state law prohibiting loitering near the correctional center.

- When DeVance again did not comply, he was placed under arrest.

- While confined in the police cruiser, Officers Checksfield and Gardner repeatedly explained to DeVance that he had been

---

[1] DeVance supplies the 150-yard estimation to the court (Filing No. 61 at CM/ECF p. 6) and upon review of the video evidence, the court agrees that it is an appropriate approximation of his location in relation to the correctional facility entrance. No defendant contests this description.

arrested for violation Neb. Rev. Stat. § 28-914, which prohibits
loitering in the "immediate vicinity" of penal institution.

(See generally Def. Exhibit 9; Def. Exhibit 4).

Neb. Rev. Stat. § 28-914 makes it a Class III Misdemeanor if "any
person…fails or refuses to leave the immediate vicinity of a penal institution when
ordered to do so by a peace officer or correctional official…[.]" Neb. Rev. Stat. §
28-914. DeVance was in the immediate vicinity of OCC. By his own admission and
estimation, he was standing, at all relevant times, approximately 150 yards from
the public entrance to OCC.

Moreover, there is uncontroverted evidence that the City of Omaha vacated
the public right-of-way on Avenue J between 23rd and 28th Streets by city
ordinance in 1984. (Filing Nos. 58-4 and 58-5).  And, when the City of Omaha
vacates title to a public right-of-way in that manner, the "[t]itle to such vacated
rights-of-way shall vest in the owners of abutting property and become a part of
such property, each owner taking title to the center line of such vacated street or
alley adjacent to such owner's property." Neb. Rev. Stat. § 14-3,107.  The video
evidence establishes that DeVance was standing on Avenue J in the section that
was vacated as a public road by the 1984 ordinance. (Def. Exhibit 9, 0:01-9:35).
Avenue J abuts OCC's property. Therefore, DeVance was not only in the
"immediate vicinity" of penal institution property, he was actually standing on
OCC's property at the time of his arrest. The video evidence also unequivocally
establishes that DeVance was asked to leave by both correction officers and
Omaha police officers and repeatedly refused to do so. (Def. Exhibit 9, 0:01-9:35).

An officer has probable cause "when the totality of the circumstances at the
time of the arrest are sufficient to lead a reasonable person to believe that the

defendant has committed or is committing an offense." Ulrich v. Pope Cty., 715 F.3d 1054, 1059 (8th Cir. 2013) (quotation omitted).

Applying a liberal interpretation to the facts presented, even if the court assumes that Neb. Rev. Stat. § 28-914 is for some reason unenforceable, or that OCC was not the owner of the land pursuant to Neb. Rev. Stat. § 14-3,107 and/or vested with the right to exclude others from that land, there is no clear establishment of law stating those statutes are unenforceable. As such, there would be no reason for Officers Checksfield and Gardner to believe they lacked probable cause for arresting DeVance. Qualified immunity extends to "law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present'" to arrest an individual. Hunter v. Bryant, 502 U.S. 224, 227 (1991) (emphasis added). Because the qualified immunity privilege extends to a police officer who is wrong, so long as he is reasonable, the governing standard for a Fourth Amendment unlawful arrest claim "is not probable cause in fact but arguable probable cause ... that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." Schaffer v. Beringer, 842 F.3d 585, 592 (8th Cir. 2016) (quoting Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir.1996).

DeVance asserts that there was not even arguable probable cause to arrest him because he had a "purpose" at OCC. In his complaint (and throughout his commentary on the video recordings), he maintains that his "purpose" was to exercise his First Amendment right to film the prison and its guards. (Filing No. 1 at CM/ECF pp. 4-5). In his opposition brief, he changes tack and argues that he had intended to enter the prison to inquire about depositing funds into an inmate's trust account but was arrested before he could complete that goal. (Filing No. 61 at CM/ECF p. 6). He claims that because he had a "purpose" on Avenue J at the

time of the incident, the defendant officers did not have probable cause to arrest him for loitering at a penal institution pursuant to § 28-914.

Whether DeVance had some purpose at the scene of the incident has no effect on the court's analysis. Even if the court accepts DeVance's version of events – that he was there to exercise his right to film public officials and/or to inquire about depositing money for an inmate – there was still arguable probable cause to believe that he violated § 28-914.  DeVance was asked to leave the immediate vicinity of a penal institution by both corrections and police officers and refused to do so.[2] His physical location in the immediate vicinity of OCC and repeated refusals to leave are memorized on film.[3] The officers asked DeVance if he was there to see an inmate, and he refused to give them a straight answer. (Def. Exhibit 4, 0:01:15 – 0:01:30). Based on the foregoing, and a plain reading of § 28-914, there was a reasonable basis for the officers to believe they had probable cause to arrest him. Stated differently, the officers were <u>reasonable</u> in their conclusion that probable cause to arrest was present, even if the court assumes they were somehow wrong in that assessment. Malley v. Briggs, 475 U.S. 335, 343 (1986). ("[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" (internal citation omitted)).

And, because the officers had arguable probable cause to arrest DeVance, there is no violation of an established statutory or constitutional right. This is true

---

[2] DeVance argues that there was no signage indicating that the section of Avenue J on which he was standing was closed to the public or indicating that he was otherwise prohibited from standing there. Even if he claims that he had no notice that the area was not a public right-of-way when he arrived there, he was given explicit notice by the responding officers.

[3] The video evidence clearly captures DeVance standing on Avenue J near the public entrance to OCC. (Def. Exhibit 9). It appears to the court that his location would, under any definition, place him in the "immediate vicinity" of a penal institution. However, even to the extent that his location would not render him in technical violation of § 28-914, the court finds that the officers were reasonable in their conclusion that DeVance was in the "immediate vicinity" of OCC.

regardless of DeVance's argument that § 28-914 is an unconstitutional general loitering statute. The court will not parse the constitutionality of § 28-914 because even if it is later rendered unconstitutional by an appropriate court ruling, its unconstitutionality was not clearly established at the time of DeVance's arrest. Officers Checksfield and Gardner are entitled to qualified immunity on DeVance's claim that his warrantless arrest violated the Fourth Amendment.

b.  Retaliatory Arrest

Relatedly, DeVance argues, or at least implies, that he was arrested not based on probable cause but in retaliation for exercising his First Amendment right to film public officials. A First Amendment retaliatory arrest claim requires four elements:

> [1] that the plaintiff engaged in protected activity, [2] that the officer(s) "took adverse action ... that would chill a person of ordinary firmness from continuing in the [protected] activity," [3] that the adverse action was motivated by the plaintiff's protected activity, and [4] that the officer(s) lacked probable cause or arguable probable cause.

Just v. City of St. Louis, Missouri, 7 F.4th 761, 768 (8th Cir. 2021). In evaluating this claim, the court need not, and will not, address whether DeVance was engaged in protected activity or whether the officials were in any way motivated by DeVance's First Amendment activity when they endeavored to arrest him.

> Like a Fourth Amendment claim for a wrongful arrest, a First Amendment retaliatory arrest claim is defeated by a showing of probable cause (or arguable probable cause). See Nieves v. Bartlett, —— U.S. ——, 139 S. Ct. 1715, 1724, 204 L.Ed.2d 1 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."); see also Quraishi, 986 F.3d at 836 (explaining that the lack of probable cause or arguable probable cause is an element of a First Amendment retaliatory arrest

11

claim); Thurairajah, 925 F.3d at 985 (naming, as an essential element, the officer(s) lack of probable cause or arguable probable cause).

Id. As extensively explained above, Officers Checksfield and Gardner had arguable probable cause to arrest DeVance.

A probable cause finding defeats a First Amendment retaliatory arrest claim in all but a narrow subset of cases:

> Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so. In such cases, an unyielding requirement to show the absence of probable cause could pose "a risk that some police officers may exploit the arrest power as a means of suppressing speech."

Nieves, 139 S. Ct. at 1727. (quoting Lozman v. Riviera Beach, 138 S.Ct. 1945, 201 L.Ed.2d 342 (2018)). Under Nieves, to overcome a finding of probable cause and maintain a claim within the narrow exception above, the plaintiff-arrestee must provide the court with "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." Id. DeVance has provided no evidence that he was treated any differently than other similarly situated individuals who refuse to leave the immediate vicinity of a penal institution after being asked repeatedly to do so by law enforcement officers. DeVance's retaliatory arrest claim cannot survive summary judgment. The uncontroverted facts do not establish a violation of any constitutional or statutory right.  And as a result, the court finds that Officers Checksfield and Gardner are entitled to qualified immunity on DeVance's retaliatory arrest claim.

c.  Excessive Force

DeVance argues that Officers Checksfield and Gardner used excessive force when they handcuffed him incident to his arrest. As with the probable cause analysis above, the court has reviewed the video evidence – both the video captured by the plaintiff and the video captured by the officers' body-worn cameras – and finds that there is no reasonable dispute as to the following facts:

- During the arrest, Officer Gardner placed DeVance in handcuffs and "double locked" them to maintain a consistent level of tightness.

- DeVance repeatedly complained that the handcuffs were too tight while being transported to Omaha Police Headquarters. DeVance indicated that the handcuffs were hurting his wrists and exacerbating a preexisting heart condition.

- The officers repeatedly asked DeVance whether he needed medical attention. DeVance did not provide a direct answer.

- DeVance refused to provide his identity to the officers. After arriving at Omaha Police Headquarters, the handcuffs were removed while DeVance and the officers waited for his identity confirmation.

- After his identity was confirmed, DeVance was again placed in handcuffs. While placing him in handcuffs, the officers offered DeVance advice related to the positioning of his hands behind his back, indicating that they were providing that advice to minimize his discomfort while handcuffed.

- When DeVance was re-handcuffed after his identify confirmation, the officers again "double locked" the handcuffs to ensure so that they could not inadvertently tighten around DeVance's wrists.

- Officers Checksfield and Gardner transported DeVance to the Douglas County Correctional Center. Upon arrival at the correctional center, DeVance's handcuffs were removed and he was booked into the facility.

(See generally Def. Exhibits 4-5).

The test for establishing a constitutional violation under the Fourth and Fourteenth Amendments' right to be free from excessive force is "whether the amount of force used was objectively reasonable under the particular circumstances." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009). If the use of force was objectively reasonable under established law, the officers are entitled to qualified immunity.

Police officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a lawful seizure, and reasonable applications of force may well cause pain or minor injuries with some frequency. Grider v. Bowling, 785 F.3d 1248, 1252 (8th Cir. 2015). Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. Peterson v. Kopp, 754 F.3d 594, 600 (8th Cir. 2014) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). The key question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Smith v. City of Brooklyn Park, 757 F.3d 765, 772 (8th Cir. 2014); see Schoettle v. Jefferson Cty., 788 F.3d 855, 859 (8th Cir. 2015). The court looks to the specific circumstances, such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether she is actively resisting arrest or attempting to evade arrest by flight. Peterson, 754 F.3d at 600.

In Crumley v. City of St. Paul, Minn., the Eighth Circuit held that the plaintiff had not been subjected to excessive force when handcuffed because she presented no evidence of long-term injury and "allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are [not] sufficient to support [a] claim of excessive force." 324 F.3d 1003, 1008 (8th Cir. 2003). The court later clarified that there is no uniform requirement that a plaintiff show more than de minimis injury to establish an application of excessive force. Chambers v. Pennycock, 641 F.3d 898, 907 (8th Cir. 2011). But the court recently relied on Crumley in rejecting an excessive force claim based on the use of handcuffs, finding that the injuries sustained were "fairly minor," and concluding that in the absence of precedent clearly holding that the use of handcuffs in the circumstances of that case amounted to more than de minimis force, it did not violate a clearly established right. Robinson v. Hawkins, 937 F.3d 1128, 1136 (8th Cir. 2019).

In this case, DeVance used a court template to prepare his complaint. That template, i.e., "Complaint for Violation of Civil Rights (Non-Prisoner)" includes a section called "Injuries." The "Injuries" section asks that a complainant describe any injuries he or she asserts were caused by or as a result of the events that form the basis of his or her complaint. (Filing No. 1 at CM/ECF p. 5) ("If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive."). In response, DeVance states: "None." (Filing No. 1 at CM/ECF p. 5). However, he does indicate in another section of his complaint that he experienced some dizziness and swelling, at least during the actual period he was handcuffed. (Filing No. 1 at CM/ECF p. 5). DeVance argues in opposition to summary judgment that the handcuffs caused "swelling," "rapid heartbeat," and "ligature marks" on his wrists. (Filing No. 61 at CM/ECF p. 13). He claims the swelling remained for two days following this incident. (Filing No. 1 at CM/ECF p. 5).

The injuries alleged by DeVance as a result of his handcuffing are analogous to the "fairly minor" injuries reported in Robinson v. Hawkins, 937 F.3d 1128, 1136 (8th Cir. 2019). The court has not been directed to (nor is it aware of) any authority clearly establishing that use of handcuffs under these circumstances was an unconstitutional use of force. As in Robinson, and in the absence of any precedent clearly holding that the use of handcuffs in the circumstances of this case amounted to more than de minimis force, the court declines to find that the officers violated a "clearly established right." Robinson, 937 F.3d at 1136.

DeVance does not mention any other injury or purported excessive force in his complaint. However, in his opposition to summary judgment, DeVance argues for the first time that the officers applied excessive force when they required him to sit in the back of their police cruiser which, in DeVance's estimation, was an unreasonably cramped confinement. He claims that as a result of riding in the back of the cruiser in transport to both the Omaha Police Headquarters and the Omaha Correctional Center, he injured his back and hip. (Filing No. 61 at CM/ECF p. 10). He further argues that they did not have sufficient airflow within the cruiser and that the lack of circulating air was unreasonable. (Filing No. 61 at CM/ECF p. 20). None of these allegations were even arguably pleaded by DeVance and need not be considered by the court. However, just in the spirit of full resolution of this matter: To the extent DeVance is attempting to cast the foregoing complaints as excessive force claims, he has presented evidence of no more than de minimis discomfort. As with the handcuffing, the court finds that the foregoing complaints do not establish the violation of any clearly established right. Cf. Robinson, 937 F.3d at 1136.

Because the uncontroverted facts do not establish violation of any clearly established constitutional right, Officers Checksfield and Gardner are entitled to qualified immunity as to DeVance's excessive force claim.[4]

### d.  Search Incident to Arrest

DeVance argues that Officers Checksfield and Gardner violated his Fourth Amendment rights when they searched him incident to his arrest. As thoroughly addressed above, the officers were reasonable in their belief that they had probable cause to arrest DeVance for violating §28-914. "[A] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." Riley v. California, 573 U.S. 373, 134 S.Ct. 2473 (2014) (emphasis added); see also Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710 (2009).

The court has found that DeVance's arrest was valid. The search of his person incident to his arrest is likewise valid. Neither officer violated a clearly established constitutional or statutory right. They are entitled to qualified immunity as to DeVance's claim for unlawful search incident to his arrest.

---

[4] Also, in the interest of completeness, the court finds that the uncontroverted facts do not establish a deliberate indifference to the medical needs of an arrestee. The officers repeatedly asked DeVance if he needed medical attention. He would not provide them with an explicit answer to that question, despite multiple attempts by the officers to obtain a direct response. DeVance has not presented evidence that he experienced a serious need for urgent medical care at the time of his arrest, and there is no evidence that a delay in treatment caused detrimental effects. The circumstances at the time of arrest were not so dramatic that a layperson easily would have recognized an obvious need for immediate care by a physician. To the extent DeVance has attempted to make a deliberate indifference claim pursuant to the Due Process Clause of the Fourteenth Amendment, Officers Checksfield and Gardner are entitled to qualified immunity. To the extent DeVance has attempted to allege deliberate indifference as a Fourth Amendment claim (as opposed to claim couched in the Due Process Clause), he has not asserted a violation of any clearly established Fourth Amendment right and the officers would likewise be entitled to qualified immunity. Bailey v. Feltmann, 810 F.3d 589, 593 (8th Cir. 2016).

In summary, DeVance's claims against Officers Checksfield and Gardner for: (1) Fourth Amendment: Unlawful Arrest (lack of probable cause); (2) First Amendment: Retaliatory Arrest; (3) Fourth and Fourteenth Amendment: Use Excessive Force; and (4) Fourth Amendment: Unlawful Search Incident to Arrest are all precluded by the doctrine of qualified immunity. And although not clearly pleaded, the court also finds that the officers are entitled to qualified immunity on any claim related to deliberate indifference to the medical needs of an arrestee. Those claims must be dismissed.

### B. Other Individual Capacity Claims

As noted at the outset of this section, DeVance has purportedly alleged two additional claims against the individual officers in this case, neither one lending itself to a qualified immunity discussion. The remaining individual capacity claims are: an Eighth Amendment claim related to excessive bail and a Fourteenth Amendment claim for "violation of the Social Security Act, etc." (Filing No. 1). Each is addressed below.

### a. Excessive Bail

In his opposition to summary judgment, DeVance makes the following argument, recited hereafter in full, related to his excessive bail claim:

> Excessive bail should not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. (wrist ligatures where handcuffed, & hip replacement surgery)[5] Class III Misdemeanor is a ticket-able offense. I should have been released.

---

[5] DeVance's claim related to his purported injuries could be construed as a claim for deliberate indifference to the medical needs of an arrestee. For the reasons discussed in fn. 4, DeVance's deliberate indifference claim, to the extent he has alleged one, will be dismissed.

(Filing No. 61 at CM/ECF p. 21). The thrust of DeVance's claim, it appears, is that he should have been ticketed rather than arrested for violation of § 28-914, and that arresting, rather than ticketing, him violated the Eighth Amendment. That is not a cognizable Eighth Amendment claim. DeVance has failed to allege any facts upon which this court can find liability on the part of any named defendant (including the City and official capacity defendant) for an Eighth Amendment excessive bail violation.

In addition to DeVance's Eighth Amendment argument, the court has considered the substance of this claim, i.e., that DeVance should have been ticketed rather than arrested, and the court cannot identify any other constitutional provision pursuant to which DeVance might have stated a cognizable claim. Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 849 (8th Cir. 2014) (determining that the Court is under a duty to examine the complaint to determine if the allegations provide for relief under any possible theory).  Having reviewed the video recorded incident, it is clear that DeVance did not plan to leave the immediate vicinity of OCC, even after repeated requests that he do so. Given his refusal to leave, it was not unreasonable for the officers to believe that an arrest, rather than a ticket, was the only means of ceasing DeVance's unlawful conduct. We vest broad authority in law enforcement to make those types of assessments, based on the facts available to them at the time of the relevant incident.

The court has determined that the officers reasonably believed they had probable cause to arrest DeVance. Given the circumstances, there was nothing unreasonable in the officers' decision to arrest, rather than ticket, the plaintiff.[6]

---

[6] In a similar vein, DeVance argues that the officers decided to arrest, rather than ticket, him because of his race. The court will liberally construe DeVance's allegations in this regard as selective enforcement claim. The Fourteenth Amendment's Equal Protection Clause prohibits selective enforcement of law based on considerations of race. Wren v. United States, 517 U.S. 806, 813 (1996).

Couched as any constitutional theory, these facts do not establish a basis for relief. This claim will be dismissed.

### b.  Social Security Act

DeVance alleges that Officers Checksfield and Gardner violated "the Social Security Act, etc." giving rise to a Fourteenth Amendment claim. (Filing No. 1 at CM/ECF p. 4). The court is unsure how to address this claim because it is unsure what, precisely, DeVance is alleging. He has provided no factual allegations related to the Social Security Act, no evidence, and does not mention the Social Security Act in his brief opposing summary judgment. DeVance has not stated a cognizable claim related to the Social Security Act (or a related Fourteenth Amendment violation). This claim will be dismissed.

## II.   Official Capacity Claims

DeVance has named the City of Omaha and Omaha Chief of Police Schmaderer, in his official capacity, as defendants in this case. The sole allegation against the City and Schmaderer is that Officers Checksfield and Gardner "report to Chief Schmaderer" and that "[t]he Chief of Police works for the City of Omaha."

---

DeVance's complaint makes a single, conclusory allegation of racial animus. There are no factual allegations or further elaboration to raise DeVance's right to relief above the speculative level. His claim in not sufficiently pleaded under the Twombly pleading standard. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies the plausibility requirement when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard requires the plaintiff to allege "more than a sheer possibility that a defendant has acted unlawfully." Id. DeVance has failed to sufficiently plead this claim, and it will be dismissed. See Paez v. Nutsch, 2021 WL 633559, at *6 (D. Neb. Feb. 18, 2021) (determining that selective enforcement claim not properly pleaded where the only allegation was that plaintiff "felt" like he was being racially profiled).

Even if the court determined that DeVance's threadbare equal protection claim was properly pleaded, the defendant officers would be entitled to summary judgment. DeVance has offered no evidence whatsoever to support this claim. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Torgerson, 643 F.3d at 1042.

(Filing No. 1 at CM/ECF p. 4). No other claims or factual allegations are made against Chief Schmaderer and the City.

"[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. New Your City Dept. of Social Servs., 436 U.S. 658, 98 S.Ct. 2018 (1978) "[A] plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). DeVance has not alleged any individual actions or inactions taken by Chief Schmaderer or the City of Omaha. In his opposition brief, he appears to frame his allegations against Chief Schmaderer and the City as a "failure to train" or "failure to supervise" claim. (Filing No. 61 at CM/ECF p. 22). His complaint, however, does not make allegations related to that theory, and he has offered no evidence to support it. He has not stated a cognizable basis for recovery against either the City or Chief Schmaderer.

Moreover, municipal liability cannot be sustained where there has been no violation of DeVance's constitutional rights as a result of action by the municipality's officials or employees. City of Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571, (1986) (finding that dismissal is appropriate when "the jury [had] concluded that the officer inflicted no constitutional harm."); see also Schulz v. Long, 44 F.3d 643, 650 (8th Cir. 1995) ("It is the law in this circuit . . . that a municipality may not be held liable on a failure to train theory unless an underlying Constitutional violation is located."). As extensively addressed above, the court finds that neither arresting officer committed a constitutional violation. Therefore, the City of Omaha and Chief Schmaderer must be granted summary judgment.

III.   Fed. R. Civ. P. 56(d)

At the conclusion of his oppositional brief, DeVance makes the following request:

> In the event the Court determines that it will grant all or part of Defendants' Motions To Dismiss, I request leave of court to conduct discovery as to qualified immunity (if such be necessary) and leave to amend my lawsuit in accordance with what the discovery reveals and in accordance with findings of the Court

(Filing No. 61 at CM/ECF p. 22). The court has construed this request as a Fed. R. Civ. P. 56(d) motion. Rule 56(d) allows the court to defer consideration of a summary judgment motion pending additional discovery. The party opposing summary judgment must show "by affidavit or declaration that, for specified reasons, [the nonmovant] cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). DeVance has not submitted an affidavit or declaration and has not indicated any specific reason additional discovery is warranted. Moreover, the discovery deadlines have all expired. The court sees no reason (or any good cause) to defer consideration of the summary judgment motion.

IV.   Conclusion

DeVance's complaint will be dismissed in its entirety. The court liberally construed DeVance's complaint to have alleged the following claims related to his August 31, 2020 arrest: Fourth Amendment: Unlawful Arrest; First Amendment: Retaliatory Arrest; Fourth and Fourteenth Amendment: Use of Excessive Force; Fourth Amendment: Unlawful Search Incident to Arrest; and Fourteenth and/or Fourth Amendment: Deliberate Indifference to the Medical Needs of an Arrestee. For all the reasons stated, the individual officers are entitled to qualified immunity on all the foregoing claims. DeVance has likewise failed to state a cognizable claim

for excessive bail violation under the Eighth Amendment or any purported violation of the Social Security Act. He also has not properly pleaded, or provided any evidence to support, a selective enforcement claim. Every claim alleged against the individual officers must be dismissed. And, having found no constitutional violation on behalf of any individual government actor, DeVance's official capacity and municipal claims fail as a matter of law.

Accordingly, IT IS ORDERED that:

1)  Defendants' Motion for Summary Judgment (Filing No. 56) is granted in its entirety.

2)  DeVance's complaint is dismissed with prejudice.

3)  A separate judgment will be entered.

Dated this 8th day of October, 2021.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge